IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MARK SPADARO,
    Plaintiff,

vs.                                      Case No. 3:06cv431/LAC/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
    Defendant.
_____/

## REPORT AND RECOMMENDATION

    This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act (Act). It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for supplemental security income (SSI) benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381–83 (Tr. 62–63).[1]

    Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

---

[1] All references to "Tr." refer to the Transcript of Social Security Administration Record filed on January 8, 2007 (Doc. 6).

I.   PROCEDURAL HISTORY

Plaintiff's application for SSI benefits was denied (Tr. 25–30). On January 12, 2005, following a hearing, an administrative law judge (ALJ) rendered a decision in which he found that Plaintiff was not under a "disability" as defined in the Act (Tr. 13–24). On August 4, 2006, the Appeals Council of the Social Security Administration denied Plaintiff's request for review (Tr. 5–9). Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court. Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998). This appeal followed.

II.   FINDINGS OF THE ALJ

On January 12, 2005, the ALJ made several findings relative to the issues raised in this appeal (Tr. 16–24):

1) Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability.

2) Plaintiff's mental impairment is severe, based upon the requirements in the Regulations (20 C.F.R. §§ 404.1521, 416.921),[2] but this impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

3) Plaintiff's testimony is credible but inconsistent with a finding of disability.

4) Plaintiff has no past relevant work experience (20 C.F.R. § 404.1565).

5) Plaintiff has the residual functional capacity (RFC) to perform work activity at the medium level of exertion and can meet the basic mental demands of work. He can perform simple, entry-level work. He can make simple decisions. He should have little or no interaction with the public and should not make complex, multi-step decisions. He can occasionally, but not frequently, interact with co-workers. He is able to work independently, but only occasionally and in coordination or conjunction with others. He should have little or no change in his work environment or setting. He can perform work which involves low stress with no planning, scheduling, report-writing, supervising, or high-production quotas (20 C.F.R. § 404.1567).

---

[2]In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits (DIB) or SSI benefits. However, separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416). Therefore, hereafter, citations in this report and recommendation should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

> 6) Plaintiff is capable of making a successful adjustment to work that exists in significant numbers in the national economy, such as a furniture cleaner, laundry worker, laundry sorter, and cafeteria attendant.

III. STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance, it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment

must be so severe that the claimant is not only unable to do her/his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

    1.    If the claimant is performing substantial gainful activity, he is not disabled.

    2.    If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

    3.    If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

    4.    If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

    5.    Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.    PLAINTIFF'S PERSONAL, EMPLOYMENT, AND MEDICAL HISTORY

    A.    Personal History

Plaintiff was eighteen and in high school when he applied for benefits on May 1, 2003 (Tr. 16–17). He alleged disability, as of October 1, 1997, due to a psychiatric disability, attention deficit

hyperactivity disorder (ADHD), and a learning disability (Tr. 17).[3] At Plaintiff's hearing on July 23, 2004, he testified that he lives with his parents, is scheduled to graduate from high school in June 2005, and hopes to attend community college (Tr. 16, 19). He was held back in the sixth grade and presently receives counseling in school (Tr. 19). Plaintiff noted that he is doing rather well in school, his education is mainstreamed, and he receives grades of 80 and above (*id.*). He has no physical limitations, but testified that he suffers from ADHD, a learning disability, impulsive behavior, anxiety, and Asperger's syndrome (*id.*). Plaintiff noted that he would rather study than socialize, he is able to shop but chooses not to, he can drive, he goes to stores and malls, he is somewhat untidy, he assists his mother with cooking, and he likes to read, including Stephen King novels, and in large part he part absorbs what he reads (*id.*). He takes medications, including Dexedrine,[4] but he has no side effects from them (Tr. 19–20).

Plaintiff's mother testified that Plaintiff acts on impulse, does not pick up social signals, tells inappropriate stories, and is argumentative and set in his ways (Tr. 19). She noted that Plaintiff does well in class when he is interested (*id.*). She also noted that Plaintiff often stays in his room, has only a few friends, and socializes mostly with his sister's friends (*id.*). Plaintiff has had no help or counseling for his disorders outside the school system (Tr. 19–20). At a supplemental hearing held on October 8, 2004, Plaintiff's mother testified that they had moved to Florida (from New York), that Plaintiff remained in school with no changes in his condition, and Plaintiff was again attending mainstream classes (Tr. 16, 19–20).

B.  Relevant Medical History (as summarized by the ALJ (*see* Tr. 17–19))

The record establishes that Plaintiff has a history of ADHD and Asperger's syndrome. He received treatment at a day program in early 1999 and has been prescribed Dexedrine since that time.

---

[3]As noted by the ALJ, SSI benefits are not payable prior to the date an application for benefits is made; thus, in the instant case, the ALJ considered Plaintiff's abilities and whether he was disabled since the filing of his application on May 1, 2003 (Tr. 16, 17). Accordingly, the time frame relevant to this appeal is May 1, 2003 (application date) to January 12, 2005 (date of the ALJ's decision).

[4]This medication stimulates nerve cells in the brain. It is used in the treatment of narcolepsy or attention deficit disorder with hyperactivity in children and adults. *See* http://www.medicinenet.com/dextroamphetamine-oral_capsule_tablet/article.htm (last visited November 28, 2007).

At the request of the Social Security Administration (SSA), Plaintiff was examined by John Seltenreich, Ph.D., in June 2003.  It was noted that Plaintiff was in regular education.  He had an individualized educational plan (IEP) and was classified as emotionally disturbed.  He has never been employed.  Dr. Seltenreich also noted that Plaintiff was not in any current mental health treatment and that he received his medications from his primary care physician, John Abbuhl, M.D.  Plaintiff reported having a variety of symptoms associated with inattention and hyperactivity, and he indicated that medication helped a lot with these symptoms.  Plaintiff also has some fine motor deficits, but he denied having symptoms of depression, or symptoms associated with panic, mania, or a formal thought disorder.  Plaintiff further denied having any cognitive deficits.  On examination, Plaintiff was cooperative and showed adequate social skills.  He had appropriate eye contact.  His thought processes were coherent and goal directed.  His affect was appropriate and of full range.  Plaintiff's attention, concentration, and memory skills were grossly intact.  He was able to recall objects immediately and after a short delay and could recall and understand testing instructions.  He is able to shop and tend to his own personal needs, he is learning to manage money, and he socializes with some friends.  Results of a valid WRAT-III test found Plaintiff's range of intelligence to be in the high-average range.  He scored 122 on the verbal scale, 99 on the performance scale, and had a full-scale IQ of 112.  Although Plaintiff did significantly better on the verbal aspect of the test than on the performance scale, this is representative of and consistent with a learning disorder.  It appeared, however, that Plaintiff could read, write, and do arithmetic well.  In conclusion, Dr. Seltenreich opined that Plaintiff is able to follow, understand, and perform simple tasks under supervision.  He is able to maintain attention and concentration for tasks, and he can consistently perform simple tasks with only mild difficulties.  He is able to learn new tasks.  He may not be able to make all decisions appropriately due to a lack of maturity.  Finally, Dr. Seltenreich noted that Plaintiff reported being able to relate adequately with others, although he has some mild problems dealing with stress.

Records from Plaintiff's primary care physician, Dr. Abbuhl, reflect a diagnosis of Asperger's syndrome and ADHD, and confirm medication management.  The remainder of Dr. Abbuhl's records, however, reflects only treatment for normal childhood illnesses.  Ian Fecko, M.D., from the same pediatric office, confirmed that Plaintiff is in good physical condition.  Dr. Fecko

opined that Plaintiff's Asperger's syndrome and ADHD would most likely be lifelong impairments impacting his social and mental abilities. Although Plaintiff has done well in school, he socially lags between four to six years behind his peers.

School records indicate that Plaintiff progresses well in academics, but his social skills with staff and peers remain an area of challenge. Plaintiff is independent in completing work in a timely fashion—albeit with some anxiety. His progress in social communication is inconsistent. He generally remains respectful of adults. He lacks organization, but he does a good job keeping up with mainstream assignments. Notes from April 2003 reveal that Plaintiff had improved and no longer required calls home to deliver forgotten items. He had also improved somewhat on monitoring his comments to and about others. Robin Gibilius, Plaintiff's teacher, noted that Plaintiff would always have difficulties interacting and relating with others because of his Asperger's syndrome. He will always need guidance and support to keep his relationships appropriate. Ms. Gibilius further opined that Plaintiff's medication enables him to improve his ability to focus and control some of his impulsive behaviors. Records from the 2004 – 2005 school year reflect that Plaintiff's relationships with staff and peers were generally good. He continues to benefit from staff efforts to guide his group interactions and from opportunities to social problem-solve.

Based on recent valid testing and evaluations, school psychologist Elizabeth Greco, M.S., C.A.S., indicated that Plaintiff has above-average intellectual functioning but delayed independence skills. His social interaction problems persist, but he appears to be reasonably happy and is succeeding. He receives special education only in social studies. Ms. Greco opined that Plaintiff is capable of higher education post high school. He will require extended time limits for test taking due to his slow processing time. His diagnosis of a pervasive developmental disorder does not appear to apply since his IQ measures in the above-average range, and his last psychiatric evaluation was six years ago. Plaintiff, however, will continue to need guidance, monitoring, and support to develop independence skills and function in adult settings.

Nathan Naparstek, Ph.D., administered a psychological evaluation on July 2, 2004. Dr. Naparstek also found Plaintiff to have above-average intelligence with symptoms of ADHD and Asperger's disorder. He noted that Plaintiff has had a good therapeutic response to Dexedrine to treat his ADHD, but he still has residual difficulties paying attention and following directions. Dr.

Naparstek opined that Plaintiff continues to need assistance for developing social skills and compensations made for his attending difficulties in school. Dr. Naparstek further opined that Plaintiff's IEP classification should be changed to "Other health impaired" instead of "Emotionally Disturbed." He believed that Plaintiff should be involved in social role playing to help his development in that area. He should participate in activities that would provide him with more opportunities to meet people, such as church or youth groups, volunteer work, recreational classes, or a part-time job. However, Dr. Naparstek also opined that when Plaintiff starts college classes, he should concentrate on his academics and not engage in employment that may distract him.

      C.      Other Information Within Plaintiff's Claim File

Abdul Hameed, M.D., completed Mental Residual Functional Capacity Assessment and Psychiatric Review Technique (PRT) forms on July 16, 2003 (Tr. 157–74). On the assessment, Dr. Hameed noted that Plaintiff has "no" or at most only "mild" functional limitations (Tr. 167). On the PRT form, Dr. Hameed found no limitations or at most "no significant" limitations in all areas of mental functioning (Tr. 171–72).

V.      DISCUSSION

Plaintiff raises three issues on appeal. First, Plaintiff contends the ALJ failed to give considerable weight to the opinions of his treating and examining physicians (Doc. 11 at 9). Next, Plaintiff contends the ALJ erred in failing to properly consider lay testimony, including evidence from Plaintiff's mother and educators (*id.* at 13). Finally, Plaintiff asserts that the ALJ erred in failing to rely on a response from the vocational expert (VE).

      A.      Treating and Examining Physicians

Plaintiff asserts that the ALJ erred in relying on the opinion of Dr. Hameed, a consulting physician (Doc. 11 at 9). Specifically, Plaintiff asserts the following: "In reaching a decision of 'not disabled,' the ALJ relied on the opinion of Abdul Hameed, M.D., the State Agency Medical Examiner who merely reviewed the Plaintiff's file." (*id.* at 10–11). A review of the ALJ's decision, however, shows that although the ALJ gave some weight to Dr. Hameed's opinion,[5] he did not rely

---

[5] It is worth noting that the ALJ was <u>required</u> to consider Dr. Hameed's opinion. "[An ALJ] must consider findings of [non-examining] State agency medical and psychological consultants . . . as opinion evidence, except for the ultimate determination about whether [the claimant is] disabled." 20 C.F.R. § 404.1527(f)(2)(i).

Case No. 3:06cv431/LAC/EMT

on it in determining Plaintiff's RFC (*see* Tr. 20). Indeed, a comparison of Dr. Hameed's opinion regarding Plaintiff's abilities and the ALJ's RFC determination shows that the ALJ found much stricter limitations than those contained in Dr. Hameed's opinion (*compare* Tr. 23 (RFC determination, as detailed *supra*) *with* Tr. 167, 171–72 (Dr. Hameed's findings that Plaintiff had <u>no restrictions</u> in activities of daily living; only <u>mild difficulties</u> in maintaining social functioning, concentration, persistence, or pace; and <u>no significant limitation</u> in any area of mental functioning, including understanding, memory, sustained concentration, persistence, social interaction, and adaptation)). The ALJ noted that Dr. Hameed's opinion was consistent with those rendered by other examining and treating physicians—to the extent that other examiners and physicians documented a mental impairment (as did Dr. Hameed (*see* Tr. 157, 171)), but nevertheless found that Plaintiff's mental impairment did not significantly interfere with his mental functional capacities (Tr. 20).

The ALJ's conclusion is supported by the record. Dr. Seltenreich, a consulting examiner, noted that the results of Plaintiff's June 2003 examination appear consistent with allegations of ADHD and a possible learning disorder (Tr. 150). However, Dr. Seltenreich opined that Plaintiff was able to follow and understand simple directions and instructions, as well as perform simple rote tasks under supervision (*id.*). Plaintiff could maintain attention and concentration for tasks and could consistently perform simple tasks with only "mild" difficulties (*id.*). Dr. Seltenreich further opined that Plaintiff had the ability to learn new tasks and would be able to perform complex tasks independently if adequately trained (*id.*). Dr. Seltenreich additionally noted that while Plaintiff had difficulties relating adequately with others while growing up, he currently was able to relate adequately with others (*id.*). Finally, Dr. Seltenreich opined that Plaintiff's prognosis was "very good" (Tr. 151).

Similarly, Dr. Naparstek's consultative examination in July 2004 resulted in a finding that Plaintiff has symptoms of both ADHD and Asperger's syndrome (Tr. 250). Although Dr. Naparstek did not specifically address Plaintiff's functional capacities, he noted that Plaintiff needed assistance in developing his social skills and compensations for his attending difficulties in school (*id.*). In particular, while noting that Plaintiff responded well to Dexedrine, Dr. Naparstek made ten general recommendations, including testing modifications and the assignment of a mentor when Plaintiff entered college, counseling support services, and increased social opportunities, such as a part-time

job, youth groups, or recreational classes (Tr. 250–51). Thus, although Dr. Naparstek gave no opinion regarding specific work limitations, overall his opinion is consistent with the ALJ's RFC determination and the conclusion that Plaintiff was capable of work. Indeed, it was one of Dr. Naparstek's opinions that it would be beneficial for Plaintiff to work.

The file also contains treatment notes from Dr. Abbuhl, Plaintiff's primary care physician. His records reflect a diagnosis of Asperger's and ADHD, managed by medication (Tr. 178–82). Moreover, Plaintiff reported that his medications "help[ed] a lot" (*see* Tr. 149). "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) (citation omitted). The remainder of Dr. Abbuhl's records reflect treatment for normal childhood checkups and illnesses, most of which occurred prior to the relevant period (*see* Tr. 184–211). Although Dr. Fecko, from the same pediatric office, opined that Plaintiff's Asperger's syndrome and ADHD would most likely be lifelong impairments impacting his social and mental abilities, his opinion is not inconsistent with the ALJ's conclusions. The ALJ recognized that Plaintiff had severe mental impairments, and further, that those impairments have and would continue to affect Plaintiff's social and mental abilities. Accordingly, the ALJ determined an RFC that includes limitations to accommodate Plaintiff's mental impairments, and the RFC is not inconsistent with Dr. Fecko's opinion.

Finally, the file contains a report from Ms. Greco, a school psychologist who evaluated Plaintiff on one occasion, which is generally summarized above. In pertinent part, however, the court notes Ms. Greco's observation that Plaintiff "readily greeted" her, was able to converse on a variety of topics, and appeared "relatively" comfortable with an unfamiliar adult (Tr. 228). He was easily engaged in the testing process, and although he tended to make political jokes or statements that might offend some, he was pleasant and friendly in his social interactions (*id.*). Ms. Greco noted that at times Plaintiff would stare off or subvocalize her questions, but she also noted that he always monitored himself and re-focused independently (*id.*). Plaintiff was "quite persistent" on all tasks and rejected assistance when struggling (*id.*). He scored in the high-average range of intelligence on the WAIS-III, exceeding 90 percent of nineteen year olds nationally (*id.*). Ms. Greco summarized that Plaintiff was above-average intellectually, but he had significant delays in independence skills (Tr. 229). However, despite persisting social interaction problems, he appeared

"reasonably happy and [was] succeeding in his current program" (*id.*). She opined that Plaintiff was capable of higher education (*id.*). She, like Dr. Naparstek, recommended testing modifications, such as extending time limits due to Plaintiff's slow processing time (*id.*). Although Ms. Greco noted that Plaintiff will continue to need guidance, monitoring, and support, her opinions are not inconsistent with the ALJ's ultimate conclusions.

Thus, the ALJ did not exclusively rely on the opinion of Dr. Hameed to find Plaintiff "not disabled." Instead, he considered the pertinent evidence of record, including the opinions of Dr. Seltenreich, Dr. Naparstek, Dr. Fecko, and Ms. Greco (*see* Tr. 21–22), and he determined Plaintiff's RFC based on the record as a whole. Although Plaintiff contends that the ALJ "failed to give considerable weight to the opinions of Plaintiff's treating and examining physicians" (Doc. 11 at 9), he points to no particular opinion that was rejected by the ALJ. Plaintiff merely summarizes the reports of Dr. Naparstek, Dr. Fecko, and Ms. Greco, and argues that Plaintiff is, in effect, "disabled" based on their reports (*see id.* at 9–12). However, as discussed above, none of these individuals opined that Plaintiff was disabled, unable to work, or otherwise limited to an extent <u>greater</u> than that determined by the ALJ. Indeed, the only opinion apparently rejected by the ALJ was the opinion of Dr. Hameed (who found that Plaintiff basically had no mental limitations). Accordingly, the court finds that the ALJ did not err.

B. Lay Testimony and Evidence

Plaintiff contends the ALJ failed to properly consider the opinions of his educators and the testimony of his mother (*see* Doc. 11 at 12–13).

Initially, Plaintiff asserts that the ALJ failed to consider his school records, which he has summarized as follows:

> [Plaintiff] was exempt from second language requirements as he required extra time outside of academics in order to receive extra assistance in dealing with emotional issues. (T[r]. 98–112, 237–39) His school progress reports reveal that he needed to further develop his problem solving skills and needed to read better the school cues of body language, facial expression and tone of voice. (T[r]. 98–112, 237–39) He needed twice as much time to take normal tests as other students and needed to take them at alternate locations with directions read and simplified for him. His teacher indicated that plaintiff needed adult intervention occasionally to keep social interaction appropriate and adult assistance in organizing his possessions and time. (T[r]. 98–112, 237–39)

(Doc. 11 at 14).

Next, Plaintiff asserts that the ALJ failed to consider the following information provided by his mother:

> The plaintiff's mother, Pat Spadaro, testified and authored a letter regarding her son's disability. (T[r]. 287–291, 307–05 [sic], 328, 336–41) She describes in great detail behavior which would make it difficult for plaintiff to be employed on a full-time basis. (Id) She indicated that plaintiff suffered a life-long problem with inappropriate social behavior. (Id) She gave examples such as plaintiff trying to tell jokes that just appeared to be strange or hurt people's feelings. Mrs. Spadaro testified that he behaved in a manner that drove others away and he never understood what he did that was unacceptable. (Id) She stated that Mark became fixated on arguments and would not stop talking or would not listen to others. She also stated that plaintiff would sleep all day until noon if he were allowed to do so. While she and Mark's father would wake Mark up in the morning and give him his medications immediately, they would have to return to his room on several occasions to ensure that he got out of bed. She further indicated that if left to his own devices, plaintiff would spend eight to ten hours a day playing video games or on the computer. She did not believe that he did this in defiance; but that he just forgot things he was told to do only moments before. She indicated he had difficulty following instructions and even if given written instruction[s], plaintiff would lose them prior to the completion of his assignment. He often misplaced things, was in a panic to find them and had to be reminded to take all of his belongings with him wherever he went. Mrs. Spadaro explained that her son must be reminded to even shower or wash his hair. If not reminded to do so he would not bathe or shower for several days and would wear the same clothes for days on end, being unaware that he had any malodor. He rarely left his room and probably would not do so if his parents did not make him. He has never been on a date or had a girlfriend and would not know how to interact in such relationships. She stated that when he was interacting with children in a regular school setting, he had a suicide attempt after an incident at school. He suffered severe depression and poor self-esteem along with severe anxiety that translated into school phobia. He was referred to the Pathway Program[6] due to his difficulty, after which he began performing better in school. (T[r]. 287–291, 307–05, 310–15, 322, 328, 336–41).

(Doc. 11 at 14–15).

While noting the ambiguous nature of the Commissioner's regulations regarding the consideration of lay testimony, the Eleventh Circuit has recently explained that "ALJs should

---

[6] The court notes that Plaintiff participated in the Pathways program from February 1999 through June 2000, prior to the time frame relevant to this appeal (*see supra*, at note 3; Tr. 128–35).

Case No. 3:06cv431/LAC/EMT

consider all available evidence, including nonmedical evidence, such as information from parents and teachers." Shinn ex rel. Shinn v. Comm'r of Social Sec., 391 F.3d 1276, 1283–85 (11th Cir. 2004) (referencing 20 C.F.R. §§ 416.924a(a), 416.929(a)).  However, the ALJ is not required to accept such testimony as true.  Like other evidence it should be considered, but it can be rejected. *See, e.g.*, Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991) (substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise); Jones v. Dep't of Health and Human Serv's, 941 F.2d 1529, 1532 (11th Cir. 1991) (the reasons articulated for disregarding a plaintiff's subjective pain testimony must be based upon substantial evidence).

Initially, regarding Plaintiff's school records, the court finds that the ALJ indeed considered the records and determined an RFC consistent with the limitations found therein.  For example, the ALJ specifically stated that he considered the opinions of Ms. Gibilius, Plaintiff's teacher, and Ms. Greco, a school psychologist (Tr. 18–19, 21).  Further, the court notes that Ms. Gibilius's opinions are found in the transcript at pages 98–112, the same pages referenced by Plaintiff, *supra*, in arguing that the ALJ failed to consider Plaintiff's school records.  Additionally, contrary to Plaintiff's assertion, the ALJ summarized Plaintiff's school records, noting that his social skills with staff and peers remain an area of challenge, he lacks organization, and he needs guidance and support to keep his relationships appropriate (Tr. 18).  Thus, the ALJ did not err, as his opinion establishes that he indeed considered Plaintiff's school records and relied upon them, in part, in determining Plaintiff's RFC.

Next, regarding the information provided by Plaintiff's mother, again the record reflects that the ALJ took pertinent parts of the information she provided into consideration.  For example, the ALJ noted the following:

> The claimant's mother testified that the claimant has a lack of forethought, and he acts on impulse.  He takes medications for this.  He does not pick up on social signals.  He does not know when to stop.  He tells inappropriate stories.  He is argumentative and set in his ways.  He does well when he is interested in the class. His mother testified that he stays in his room a lot and does not have many friends. He socializes mostly with his sister's friends. . . . At the supplemental hearing, the claimant's mother testified that they moved to Florida.  The claimant was in school and there were no changes in his condition.  Ms. Spadaro testified that the claimant was attending mainstream classes.

(Tr. 20–21).

In discussing the testimony provided by Ms. Spadaro, the ALJ also described the testimony provided by Plaintiff and concluded by saying that he found Plaintiff's testimony to be credible but inconsistent with a finding of disability (Tr. 20). He did not make the same statement regarding the testimony of Ms. Spadaro, but it is obvious from a review of the ALJ's entire opinion, that he largely accepted the testimony of Plaintiff's mother. For example, the ALJ concluded that Plaintiff is "still capable of meeting the mental demands of work" (*id.*). In reaching this conclusion, the ALJ specifically noted that he gave "great consideration" to the fact that Plaintiff is in mainstreamed classes, which was a fact provided by Plaintiff's mother (*see* Tr. 21). He also considered Ms. Spadaro's report that Plaintiff "does well when he is interested" and the fact that Plaintiff socializes with his sister's friends, additional facts provided by Plaintiff's mother (*id.*). Although the ALJ did not mention every piece of information provided by Plaintiff's mother, he is not required to do so, as long as the record as a whole is consistent with his opinion. Moreover, not all of the information provided by Ms. Spadaro is relevant to the time frame under consideration, including the suicide attempt (*see* Tr. 279–80 (report dated November 1998 mentioning a suicide gesture)) or the Pathway's program (*see supra*, at note 6). Furthermore, although the ALJ stated that he found Plaintiff's testimony to be fully credible, but inconsistent with a finding of disability, and he did not specifically state the same regarding the testimony of Plaintiff's mother, the ALJ never indicated that her testimony was <u>not</u> worthy of belief. Instead, the ALJ utilized pertinent and relevant portions of her testimony in finding that Plaintiff was not disabled. Thus, although it would have been better for the ALJ to specifically state the weight he accorded to Ms. Spadaro's testimony, this oversight does not entitle Plaintiff to relief, especially considering that the ALJ largely accepted her testimony as true.

      C.      Testimony of the VE

Finally, Plaintiff contends that the ALJ erred in failing to rely on the VE's response to a hypothetical question, which was posed by the ALJ during Plaintiff's second administrative hearing (Doc. 11 at 16–17).

The ALJ's original hypothetical question to the VE included an individual of Plaintiff's age, education and experience who could perform medium work activity (the ALJ noted that Plaintiff

testified he could lift fifty pounds) (Tr. 331–32). The individual would also have non-exertional impairments which would limit him to performing simple entry-level work only, the individual could make simple decisions, but could not make complex, multi-stepped decisions and there should be little or no interaction with the public (Tr. 332). Further, the individual could have occasional, but not frequent, interaction with co-workers, and he could work in proximity to co-workers, but he could only occasionally (i.e., approximately one-third of the time) work in coordination or in conjunction with co-workers (*id.*). He would require a job which involved little or no change in the work environment or setting (*id.*). Finally, the job would have to be low stress, and require no planning, scheduling, report writing, supervising, or high production quotas (*id.*). In response, the VE testified that there would be work available for such an individual, including a "cleaner/furniture," laundry worker, laundry sorter, and cafeteria attendant (Tr. 332–35). Next, the ALJ noted Plaintiff's occasional impulsive behavior and easy distractibility, and he asked the VE if this would interfere with Plaintiff's ability to do the aforementioned jobs (Tr. 335–36). The VE indicated that it would not (Tr. 336).

Plaintiff's mother was then given an opportunity to question the VE. The VE repeatedly emphasized that, despite a person having a great level of distractibility, the jobs he identified, especially the furniture cleaner and laundry sorter, required minimal interaction with others so there would be minimal distraction (indeed, the VE noted that he had observed persons perform these jobs while wearing Walkman's or listing to "blaring" radios (*see* Tr. 336)) (Tr. 337). After Plaintiff's mother insisted that Plaintiff is always distracted when other people are around, and that he (Plaintiff) "doesn't look at the task, he looks at what other people are doing, and then that becomes the world, not the task," the VE finally opined that "if [Plaintiff] can't focus to that degree, then he wouldn't be able to do these jobs or any other jobs" (Tr. 338). Nevertheless, the VE indicated that the characterization provided by Plaintiff's mother did not appear to accurately describe Plaintiff because Plaintiff was in mainstreamed classes and was able to function well in those classes (as the ALJ noted, Plaintiff made "good marks in school" (*see* Tr. 335)) (Tr. 338). Finally, the VE acknowledged that if Plaintiff needed a "resource person," then Plaintiff could work only in a sheltered environment, which does not constitute substantial gainful employment. In the end the

ALJ relied on the answer to the hypothetical questions he first posed to the VE, finding that Plaintiff was capable of performing the jobs initially identified by the VE (*see, e.g.*, Tr. 23).

As the court is well aware, a hypothetical question must comprehensively describe the plaintiff's condition, and vocational expert testimony that does not accurately address that condition cannot be considered substantial record evidence. Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985). However, the ALJ is not required to include findings in the hypothetical that he has properly rejected as unsupported. *See* McSwain v. Bowen, 814 F.2d 617, 620 n.2 (11th Cir. 1987).

The ALJ was not required to accept that portion of the VE's testimony that was based on the extreme limitations suggested by Plaintiff's mother. As the VE noted, Plaintiff was in mainstreamed classes and functioning well (*see* Tr. 338); thus, Plaintiff obviously did not constantly focus on others instead of staying on task, because he would have failed tests and he would have had failing grades. As noted by the ALJ, Plaintiff had good grades, and his school records noted that he was independent in completing work. Moreover, the VE identified simple jobs that required minimal interaction with others. Thus, although the ALJ did not specifically state that he discounted the extreme limitations suggested by Plaintiff's mother or his reasons for rejecting them, any error in failing to do so was harmless.[7] It is evident to this court that the ALJ agreed with and relied upon the VE's observations that the extreme limitations were inconsistent with the record. Moreover, the VE testified that even if Plaintiff was greatly distracted by others (*see* Tr. 335–36) he could still perform the identified jobs because those jobs (especially the furniture clearer and laundry sorter jobs (*see* Tr. 337)) required minimal interaction with others. Thus, the ALJ did not err.

VI. CONCLUSION

---

[7]*See* East v. Barnhart, 197 Fed. Appx. 899, 901 n.3 (11th Cir. 2006) (failure to mention psychologist's report harmless where findings in report were consistent with ALJ's ultimate determination); Pichette v. Barnhart, 185 Fed. Appx. 855, 856 (11th Cir. 2006) (ALJ's erroneous statements found to be harmless where ALJ applied proper legal standard); Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (misstatements harmless where ALJ applied correct legal standard despite the first misstatement, and the second misstatement was irrelevant). Moreover, the court notes that it was the testimony of Plaintiff's mother, not of Plaintiff, that was partly discredited by the ALJ. *Cf.* MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986) ("[i]f the Commissioner refuses to credit [subjective testimony of the plaintiff concerning pain] he must do so explicitly and give reasons for that decision. . . . Where he fails to do so we hold as a matter of law that he has accepted that testimony as true.") (emphasis added). Thus, despite the ALJ's failure to specifically discredit some of the statements of Plaintiff's mother, the court is not required to accept those statements as true.

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); <u>Lewis</u>, 125 F. 3d at 1439; <u>Foote</u>, 67 F.3d at 1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this 26th day of December 2007.

                /s/ *Elizabeth M. Timothy*
                **ELIZABETH M. TIMOTHY**
                **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Any objections to these proposed recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**